Coös,
March 2, 1937.

LENA K. SMITH *v.* INTERSTATE PASSENGER SERVICE & *a.*

PEARL K. WHEELER *v.* SAME.

CENTRAL SURETY AND INSURANCE CORPORATION

*v.*

LENA K. SMITH & *a.*

*Bernard Jacobs* (by brief and orally), for Lena K. Smith and Pearl K. Wheeler.

*Frank P. Blais* and *Crawford D. Hening* (*Mr. Hening* orally), for the Central Surety and Insurance Corporation and for the defendants in the tort actions.

MARBLE, J.. The Interstate Passenger Service operated a motor bus between Dover and Littleton. This bus was scheduled to reach Littleton in the evening and to leave there on the following morning. Ordinarily the driver of the bus parked it at night in the "city parking space" at Littleton, but on the evening of the accident he decided to spend the night at a tourists' resort, situated about a mile east of Twin Mountain, where he had stayed on a few previous occasions. While driving toward that point he collided with an automobile, causing the injuries for which the plaintiffs in the tort actions seek recovery.

The material portion of his testimony, which is the basis of the court's finding, is as follows: "Q. Were you authorized to drive your automobile at any other place beyond the destination of Littleton? A. I have no authorization, no .... Q. Did your company know that you were going to Twin Mountain that night? A. They didn't .... Q. Where did you keep your car? A. Up in the city parking space. Q. And sometimes you kept it there, and they left it to your discretion, didn't they? A. Yes. Q. Yes, you could leave the car wherever you deemed it advisable? A. Well, except,—as long as it was in Littleton, yes. ... Q. As a matter of fact, as far as your employers were concerned, ... it didn't make any difference to them whether you stayed in one town or another town? A. Oh, it did. Q. It did make a difference? A. Yes. Q. Will you tell us how you know that it did? A. Because I had orders to go to Littleton and stay there over night and come back in the morning. Q. You had orders to go to Littleton and to start from Littleton to go back, and isn't that exactly what your orders were, and nothing else? A. Well, yes, to start from Littleton in the morning. Q. And whether or not you crossed the town line into Lisbon or into Bethlehem or into Dalton didn't mean anything, so far as you know, to your concern, did it? A. I certainly knew it did, yes .... Q. Were you on the company's business that night,—of any kind? A. Oh, no, sir."

On this evidence it could not be found "that Monroe took the automobile bus with the consent of the Interstate Passenger Service."

The policy issued by the Central Surety and Insurance Corporation to the Interstate Passenger Service contained the following provision: "The coverage provided herein to a person responsible for the opera-

tion of the named insured's motor vehicle with his expressed or implied consent is extended to uses authorized by such person whether or not the particular use was authorized by the Named Assured."

It has been very recently held that uses authorized by the express or implied consent of the named assured are the limits of coverage under this particular provision. *Travelers Ins. Co.* v. *Greenough, ante,* 391. The present case is therefore governed by the rule of *Sauriolle* v. *O'Gorman,* 86 N. H. 39.

No question relating to the liability of Monroe, who is joined as a defendant in the tort actions, has been raised. It is assumed that as against him the plaintiff in each action is entitled to judgment on the verdict.

*Exceptions sustained.*

All concurred.