**Sonja CROES, Plaintiff, Appellant,**

v.

**UNITED STATES of America,**
**Defendant, Appellee.**

**Janet NUSSMAN, Plaintiff, Appellant,**

v.

**UNITED STATES of America,**
**Defendant, Appellee.**

**Nos. 83–1565, 83–1566.**

United States Court of Appeals,
First Circuit.

Argued Dec. 7, 1983.

Decided Feb. 1, 1984.

Albert P. Zabin, Boston, Mass., with whom Schneider, Reilly, Zabin, Connolly & Costello, P.C., Boston, Mass., was on brief, for appellants.

Patti B. Saris, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.

COFFIN, Circuit Judge.

This case arises out of a fatal car accident. The driver of the car, Devon Bates, was killed. The two passengers in the car, Janet Nussman and Sandra Croes, were seriously injured. Nussman and Croes brought this suit for damages against Bates's employer, the United States government. The District Court for the District of Massachusetts concluded that Bates was not acting within the scope of his employment at the time of the accident and granted the government's motion for summary judgment. We affirm.

Bates, who was an employee of the Community Services Administration (CSA), lived in Swampscott, Massachusetts. He was asked by his superiors in the CSA to attend several meetings in northern New England on the weekend of October 20–22, 1978, on behalf of the CSA. Bates left Boston on Friday afternoon, October 20. He drove his own car and was accompanied by Nussman, Croes, and a puppy. Bates and Nussman had lived together for several years, but were not married. Croes, who was a friend of Nussman, was visiting from California. Although its not necessary to our resolution, we note that Bates appears to have been authorized to bring Nussman to these meetings as his guest. Croes's attendance does not appear to have been authorized; Bates and Nussman apparently brought her along so that she could enjoy the fall foliage.

Bates attended a brief business meeting in Charlestown, New Hampshire on Friday evening. He then drove north to White

River Junction where he and his companions spent the night at a motel. White River Junction is approximately 25 miles south of Fairlee, Vermont, where Bates was to attend a meeting and dinner on Saturday. Rather than make the short drive directly north to Fairlee on Saturday morning, Bates drove approximately 40 miles southeast to Warner, New Hampshire in order to leave his puppy with a friend. The accident occurred in Grantham, New Hampshire, which is located about 17 miles southeast of White River Junction, as Bates was returning to White River Junction to resume his travel north.

The plaintiffs argue that the government is liable for their injuries because they were injured as the result of the negligence of its employee. The cause of the accident is a mystery; there is no evidence of negligence. The car simply went off the road on a bright, clear morning. This has led to some dispute about whether the doctrine of res ipsa loquitur may properly be applied to the facts of this case. Because we agree with the district court that Bates was not acting within the scope of his employment when the accident occurred, we need not resolve this question.

The plaintiffs contend that Bates was acting within the scope of his employment when he made the side trip to Warner to drop off the puppy. They argue that the trip served the interest of the government as well as Bates. According to the plaintiffs, Bates and Nussman could not have attended the meeting without making some arrangement to care for the puppy. They note that Bates's supervisor, recognizing that Bates could not leave the puppy at home with his frail mother, actually suggested that he leave it with his friend in Warner. Since Bates's government employer suggested and authorized this side trip and since the trip was necessary to allow Bates and Nussman to attend the ceremonial dinner on behalf of the government Saturday night, the plaintiffs contend that Bates was acting within the scope of his employment when he had the accident.

In asserting that Bates was acting within the scope of his employment, plaintiffs rely on *Lamarier v. A. Towle Co.,* 94 N.H. 246, 51 A.2d 42 (1947) and Restatement (Second) of Agency § 236 (1958), which note that conduct may be within the scope of employment even though done in part to serve the purposes of the employee. While we recognize that principle, we believe that Bates's conduct was "too little actuated by a purpose to serve the master", to bring it within the scope of his employment. Restatement (Second) of Agency § 228(2) (1958). We hold that the government is not responsible for the plaintiffs' injuries. *See* 28 U.S.C. § 2675(a).

We find support for our view in comment c to § 229 of the Restatement (Second) of Agency (1958), which states that acts of a personal nature "are not within the scope of employment", even if the acts have been authorized, if the "acts are for the personal convenience of the employees and are merely permitted by the master in order to make the employment more desirable". *See also Sauriolle v. O'Gorman,* 86 N.H. 39, 42, 163 A. 717 (1932) (noting that even if an employer authorizes his employee to make a side trip for the employee's purposes, the employer is not liable for the employee's negligence).

The law of New Hampshire, which was the site of the accident, governs the determination of the scope of Bates's employment. 28 U.S.C. § 1346(b). Although we have been referred to no case closely on point, we are confident that a New Hampshire court resolving this case would follow the approach of the Restatement. *See e.g. Lemarier v. A. Towle Co.,* 94 N.H. 246, 51 A.2d 42 (1947); *Savriolle v. O'Gorman,* 86 N.H. 39, 163 A. 717 (1932).

As the authors of the Restatement have noted, "[s]ince the phrase 'scope of the employment', is used for the purpose of determining the liability of the master for the conduct of servants, the ultimate question is whether or not it is just that the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business in which the servant

is employed". Restatement (Second) of Agency § 229 comment a (1958). On the facts of this case we do not believe it would be just to hold the government responsible for Bates's conduct. Our conclusion is influenced by the length of the detour (about 80 miles round-trip), by the government's minimal interest in the care of the puppy, as contrasted with the major motivation of accommodating the convenience of the employee, and by the fact that the accident occurred while Bates was still quite far from White River Junction, the departure point for his detour. Accordingly, we decline to impose liability on the government in this case and conclude that Bates was not acting within the scope of his employment when the accident occurred.

*The judgment of the district court is affirmed.*