Horne v. DePetrillo, et al.        04-CV-076-SM  04/18/05
              UNITED STATES DISTRICT COURT

                DISTRICT OF NEW HAMPSHIRE


Betty F. Horne,
     Plaintiff

     v.                              Civil No. 04-cv-76-SM
                                     Opinion No. 2005 DNH 064
Alfred J. DePetrillo;
Odessa Corp. d/b/a
Fastop Convenience Store;
Kleen Laundry & Dry
Cleaning Services, Inc.;
and Michael Roberts,
     Defendants


                        O R D E R


     Betty F. Horne filed this five-count complaint[1] against

Alfred J. DePetrillo ("DePetrillo"), Odessa Corp. d/b/a Fastop

Convenience Store ("Fastop"), Kleen Laundry & Dry Cleaning

Services, Inc. ("Kleen Laundry" or "the company"), and Michael

Roberts, seeking damages for injuries suffered after she was

struck by an automobile driven by DePetrillo.  Count I asserts

that DePetrillo was negligent.  Count II asserts that Kleen

Laundry is liable for DePetrillo's negligence because he was

_____

     [1] The claims appear to be misnumbered in plaintiff's second
amended complaint.  Two counts are marked "Count IV."  The second
Count IV will be referred to as Count V.

acting within the scope of his employment at the time of the accident. Count III asserts that Kleen Laundry negligently instructed DePetrillo to rush to work. Count IV asserts that Fastop was negligent when it failed to remove snow and ice from the parking lot DePetrillo was exiting at the time of the accident, and Count V asserts a similar claim against Michael Roberts, who was allegedly responsible for removing snow from Fastop's parking lot.

Defendant Kleen Laundry moves for summary judgment on Counts II and III. Plaintiff objects. For the reasons set forth below, defendant's motion for summary judgment is granted.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In considering a motion for summary judgment, the court must view the record "in the light most hospitable" to the nonmoving party. Euromodas, Inc. v. Zanella, Ltd., 368 F.3d 11, 17 (1st Cir. 2004) (citing Houlton Citizens'

2

Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). An issue is "'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). An issue is "'material' if it potentially affects the outcome of the suit." Id. at 199-200.

In support of its summary judgment motion, the moving party must "identify[] those portions of [the record] which . . . demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party successfully demonstrates the lack of a genuine issue of material fact, "the burden shifts to the nonmoving party . . . to demonstrate that a trier of fact reasonably could find in [its] favor." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-25). Once the burden shifts, the nonmoving party "may not rest upon mere allegations or denials of his [or her] pleading, but must set forth specific

3

facts showing that there is a genuine issue for trial."
Anderson, 477 U.S. at 256.

**BACKGROUND**

The facts, set forth in the light most favorable to Horne, are as follows.  On the morning of January 30, 2003, Horne was walking "at or near the intersection of Hanover Street and Route 20 in Lebanon, New Hampshire."  (2d Am. Compl. (hereinafter "Compl.") ¶ 8.)  DePetrillo, who had been at the Fastop convenience store, "made a right hand turn out of the parking lot onto Hanover Street" where his vehicle "struck and ran over" Horne.  (Compl. ¶ 15.)  As a result of the accident, Horne suffered various injuries that resulted in an "extended period of hospitalization" and "a nursing home admission."  (Compl. ¶ 20.)  Horne has incurred "medical expenses in excess of $381,000 . . . permanent loss of function, disability, pain and suffering, as well as lost wages and lost future earning capacity."  (Compl. ¶ 20.)

At the time of the accident, DePetrillo was employed by Kleen Laundry, where he worked as a part-time spotter.  (Def.'s

4

Mot. Summ J., Ex. A (Gosselin Aff.) ¶ 3.)  DePetrillo had worked for Kleen Laundry for a number of years, starting as a full-time employee.  (Def.'s Mot. Summ. J., Ex. C. (DePetrillo Dep.) at 29.)  As Kleen Laundry's business "dwindled," DePetrillo's hours were gradually reduced, and he became a part-time employee.  (DePetrillo Dep. at 30.)  At the time of the accident, DePetrillo was regularly working five days a week, for four hours a day, beginning each workday at noon and ending at 4:00 p.m.  (Pl.'s Mot. Summ. J., Tab 2 (Gosselin Dep.) at 25-6.)  On the morning of the accident, Kleen Laundry called DePetrillo and asked him to come to work early because "the lady who normally did [Kleen Laundry's] bagging was busy with other tasks."  (Def.'s Mot. Summ J., Ex. B (Murrey Aff.) ¶ 4.)  Although DePetrillo says he does not now recall the specific language used when he was asked to report to work, shortly after the accident he told the police that he was told to arrive at work "pronto."  (DePetrillo Dep. at 39-43.)

DePetrillo, like all of Kleen Laundry's employees, is "paid only for the time that [he] actually spend[s] working."  (Gosselin Aff. ¶ 6.)  The company "does not now, and has not ever

5

paid its employees to drive to and from work" (Gosselin Aff. ¶ 5), and has never "exercise[d] any direction or control over the operation of [DePetrillo's] personal vehicle" (Gosselin Aff. ¶ 17). DePetrillo was driving "his personal vehicle on the day of the accident [which] was not in any way within the scope of his part-time employment as a spotter . . . ." (Murrey. Aff ¶ 19.) While on his way to work, DePetrillo stopped at Fastop to pick up a newspaper. (DePetrillo Dep. at 13.) Fastop "is not located anywhere between [] DePetrillo's home . . . and [Kleen Laundry]" and nobody from Kleen Laundry ever requested that DePetrillo stop there. (Gosselin Aff. ¶ 12-14; Murrey Aff. ¶ 13-15.)

## DISCUSSION

Kleen Laundry moves for summary judgment on both negligence counts, arguing that, as to Count II, DePetrillo was acting outside the scope of his employment when the accident occurred, and accordingly, it cannot be held liable under the theory of respondeat superior. Regarding Count III, defendant asserts that it had no direct control over the vehicle that caused the accident and therefore cannot be held liable.

6

I.   Vicarious Liability (Count II)

"Under respondeat superior, 'an employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting within the scope of his or her employment when his or her tortious act injured the plaintiff.'"  Porter v. City of Manchester, 151 N.H. 30, 39-40 (2004) (quoting Pierson v. Hubbard, 147 N.H. 760, 766 (2002)).  Moreover,

> [a]n employee's conduct falls within the scope of his or her employment if: (a) it is of the kind he or she is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master.

Pierson, 147 N.H. at 766 (citing RESTATEMENT (SECOND) OF AGENCY § 228 (1958)).

Here, plaintiff contends that because DePetrillo was acting within the scope of his employment when traveling to work on the morning of the accident, Kleen Laundry is liable for her injuries.

7

The first prong of the <u>Pierson</u> scope-of-employment test asks whether DePetrillo's conduct on the morning of the accident was "of the kind he [] was employed to perform." 147 N.H. at 766. Here, DePetrillo was employed as a part-time spotter and occasionally handled other related duties on an as-needed basis. There is no evidence that any of those duties required DePetrillo to operate a motor vehicle and no evidence suggests he was operating his personal vehicle to further some goal, or achieve some end, of Kleen Laundry.

DePetrillo's work for Kleen Laundry was different than that of the employee in <u>Murray v. Travelers Insurance Co.</u>, 601 N.W.2d 661 (Wis. Ct. App. 1999), who was hired "to travel to [] patients' homes and administer physical therapy to them." <u>Id.</u> at 664. In finding that the <u>Murray</u> employee's travel to and from patients' homes fell within the scope of her employment, the court noted that the terms of her employment "required her to travel to various sites to carry out her duties as a physical therapist" and that "her workplace differed significantly from that of an employee who leaves each day for his or her fixed place of employment." <u>Id.</u> at 665.

8

DePetrillo's case also differs from Carter v. Reynolds, 815 A.2d 460 (N.J. 2003), where the employee was "required to work in [her] firm's [] office, and also visit clients." Id. at 462. Although the employee was "required to use her own vehicle for travel" id., the court found that the "employer benefits by not having to have available an office car and yet possessing a means by which off-site visits can be performed by its employees." Id. at 468. Thus, while the employee in Carter was operating her own vehicle, because she was doing so in an effort to fulfill an obligation of her employment, her travel to and from clients' was considered to be within the scope of her employment.

Here, there is no evidence to suggest that DePetrillo's employment obligations to Kleen Laundry required that he travel to clients or customers as the employees did in Murray and Carter. Plaintiff has therefore failed to establish that DePetrillo's conduct before the accident was of the kind he was employed to perform.

The second prong of the Pierson test similarly supports the conclusion that DePetrillo was not acting within the scope of

9

employment when the accident occurred.  This prong considers whether the conduct "occurs substantially within the authorized time and space limits" of the employment.  147 N.H. at 766. Defendant has produced testimony that Kleen Laundry only compensates employees for the "time they spend working" (Gosselin Aff. ¶ 17), which supported by the fact that the company requires its employees to "'punch in' and 'punch out,'" thereby creating a precise tabulation of the number of hours each employee worked (Gosselin Aff. ¶ 6).  Moreover, Kleen Laundry does not compensate its employees for the time they spend commuting to and from work. (Gosselin Aff. ¶ 5.)

Considering these undisputed facts, it is clear that DePetrillo's drive to work on the morning of the accident did not take place during the "authorized time and space limits" of his employment.  As discussed in relation to the first prong, all of DePetrillo's job duties were performed on Kleen Laundry's site. Further, because DePetrillo was paid on an hourly basis and was not being paid for the time he was driving to work on the morning of the accident, he was clearly not within the authorized time limits of his employment.

The third prong of the Pierson test considers the nature of the employee's conduct to determine whether "it is actuated, at least in part, by a purpose to serve the master."  147 N.H. at 766.  Plaintiff argues that because DePetrillo was an on-call employee, his commute to work on the morning of the accident was intended to serve defendant because he only traveled to work only after he was called to come in.  Defendant maintains that DePetrillo was on a personal errand before his employment duties began.  Defendant is correct.

While it is true that DePetrillo's conduct in driving to work was "actuated, at least in part, by a purpose to serve the master," id., the specific conduct that gave rise to the accident, that is, DePetrillo's stop at a convenience store, served no purpose of his employer.  Although the RESTATEMENT (SECOND) OF AGENCY, upon which the Pierson court relied, notes that "[g]etting ready to work . . . may be within the scope of employment" RESTATEMENT (SECOND) OF AGENCY § 229, Comment c, the New Hampshire Supreme Court has held that "the immediately predominating purpose of the [employee's action] must have had some relation to his master's service beyond a mere intent to

11

resume it later." Sauriolle v. O'Gorman, 86 N.H. 39 (1932)
(citing Stegman v. Sturtevant & Haley Beef & Supply Co., 137 N.E.
363, 364 (Mass. 1922)).

Applying that standard here, DePetrillo's conduct cannot be
said to have served any purpose of his employer. Although
DePetrillo was on his way to work when the accident occurred, the
mere fact he had left his residence with the intention of
eventually going to work is insufficient to bring the trip within
the scope of his employment. Put differently, "the immediately
predominating purpose" of DePetrillo's stop at the convenience
store had no "relation to his [employer's] service beyond a mere
intent" to go to work later. Accordingly, DePetrillo's brief
stop at the convenience store served no purpose of Kleen Laundry.

Although New Hampshire has yet to do so, some jurisdictions
have adopted the so-called "special mission" exception to the
general rule that travel to and from work falls outside the scope
of employment. See, e.g., Chevron, U.S.A., Inc. v. Lee, 847
S.W.2d 354, 356 (Tex. App. 1993). As the Texas Court of Appeals
explained:

12

> a "special mission" exists when an employee is not simply traveling from his home to his normal place of employment, or returning from his normal place of employment to his home for his own purpose, but is traveling from his home or returning to it on a special errand either as part of his regular duties or at the specific order or request of his employer.

Id. In Chevron, an employee's actions were found to be within the scope of employment when he was "ordered to attend a mandatory seminar . . . on what otherwise would have been his day off from normal employment." Id. at 355. Here, even if New Hampshire were to adopt the "special mission" exception, DePetrillo's drive to work on the morning of the accident would not fall within it. Unlike the employee in Chevron, DePetrillo was "simply traveling from his home to his normal place of employment" and was not "on a special errand" as plaintiff suggests. Id. at 356.

Finally, in her objection to summary judgment, plaintiff analogizes to workers' compensation law, arguing that the workers' compensation "special duty exception" brings DePetrillo's drive to work within the scope of his employment. Although some states have had occasion to apply workers'

13

compensation concepts to tort claims, see, e.g., Carter, 815 A.2d at 466, New Hampshire has not yet done so. Plaintiff identifies no case in which the New Hampshire Supreme Court has interpreted agency law by reference to workers' compensation law, and no case in which that court has applied the "special duty exception" to agency law. This court declines to do so here.

But even if the "special duty exception" were applied in this case, plaintiff's claim would still fail. Plaintiff emphasizes the fact that DePetrillo was available on an "on-call" basis and, analogizing to workers' compensation law, argues that under the "special duty exception" DePetrillo's drive to and from work should be considered within the scope of his employment. To support this argument, plaintiff cites Heinz v. Concord Union Sch. Dist., 117 N.H. 214 (1977), where the court found a school teacher to be acting within the scope of employment when he was on his way home, to change clothes, in order to chaperone a school dance. Id. at 216-17. In reaching its conclusion, the court noted that the teacher "was not obligated to chaperone school dances" id. at 216, and "that chaperoning was an irregular event, that duties occupying evening weekend hours were not

14

routine, and that evening travel often presents special hazards." Id. at 219. But here, unlike the teacher in Heinz, DePetrillo's conduct was regular and routine, and DePetrillo did have an obligation to work when called upon to do so.

Simply put, DePetrillo's travel to work on the morning of the accident was consistent with the regular terms and conditions of his employment; it was not a "special duty."

Plaintiff also argues, again analogizing to workers' compensation law, that because DePetrillo was an "on-call" employee who only went to work when he was specifically asked to, his travel to and from work was within the authorized time and space limits of his employment. But courts have routinely recognized "that the mere fact of being on call does not place employees within the scope of their employment." Clickner v. City of Lowell, 663 N.E.2d 852, 855 (1996) (footnote omitted). One court has held, however, that "[a]n employee traveling to work after being summoned by his or her employer could be acting within the scope of employment if additional facts support such a

15

finding." Id. (citing Evington v. Forbes, 742 F.2d 834, 835-36 (4th Cir. 1984) (applying North Carolina law)).

In Evington, the employee was on "'call back' status" which "entailed wearing a beeper and staying within the beeper's range." 742 F.2d at 835. "When the beeper sounded, he was required to return to the hospital," id., an arrangement that is arguably similar to DePetrillo's relationship with Kleen Laundry. But unlike the present case, the employee in Evington was compensated for the time he was on call-back status. Id. at 835-36. This served as an "additional fact" which the court found to support the notion that the employee was acting within the scope of his employment. Id. Here, beyond the mere fact that he was arguably on call, there is nothing more to suggest that DePetrillo's conduct on the morning of the accident fell within the authorized time and space limits of his employment.

The undisputed factual record disclosed that DePetrillo was not acting within the scope of his employment on the morning of the accident. Accordingly, Kleen Laundry is entitled to judgment as a matter of law on Count II.

16

II.  Direct Negligence (Count III)

"A plaintiff claiming negligence must prove: (1) that the defendant owed the plaintiff a duty; (2) that the duty was breached; (3) that the plaintiff suffered an injury; and (4) that the defendant's breach was the proximate cause of the injury." Vachon v. New England Towing, 148 N.H. 429 (2002) (citing Ronayne v. New Hampshire, 137 N.H. 281, 284 (1993)).  Further, "[d]etermining the standard of care in a particular case, i.e., the duty placed upon a defendant under given circumstances, is a question of law."  Allen v. Dover Co-Recreational Softball League, 148 N.H. 407, 417 (2002) (citing Young v. Clogston, 127 N.H. 340, 342 (1985)).

Plaintiff asserts that Kleen Laundry's breach of two different duties caused DePetrillo's accident.  Specifically, plaintiff claims Kleen Laundry had duties (1) to close its facilities during inclement weather conditions; and (2) to not tell its employees to travel to work "pronto."  Kleen Laundry asserts that no such duties exist because it never had any control over DePetrillo's vehicle.  Defendant is correct.

17

Generally, "[a]ll persons have a duty to exercise reasonable care not to subject others to an unreasonable risk of harm." Remsburg v. Docusearch, Inc., 149 N.H. 148, 153 (2003) (citing Walls v. Oxford Mgmt. Co., 137 N.H. 653, 656 (1993)). Moreover, "[w]hether a defendant's conduct creates a risk of harm to others sufficiently foreseeable to charge the defendant with a duty to avoid such conduct is a question of law." Id. (citing Iannelli v. Burger King Corp., 145 N.H. 190, 193 (2000)). Typically, "[p]arties owe a duty to those third parties foreseeably endangered by their conduct with respect to those risks whose likelihood and magnitude make the conduct unreasonably dangerous. Id. (citing Hungerford v. Jones, 143 N.H. 208, 211 (1998)). However, "under all ordinary and normal circumstances, in the absence of any reason to expect the contrary, the actor may reasonably proceed upon the assumption that others will obey the law." Id. (quoting Walls, 137 N.H. at 656).

While the foregoing principle is typically articulated in the context of claims that a defendant is somehow liable for a criminal attack on a plaintiff by a third party, see, e.g., Dupont v. Aavid Thermal Techs., Inc., 147 N.H. 706 (2002)

18

(employer found not liable for one employee shooting another), it is equally applicable here. When an employer requires its employees to travel to work during periods of inclement weather, the employer is entitled to assume that its employees will act as reasonably prudent people would act under the prevailing circumstances, unless there is some reason to believe otherwise. Similarly, even when an employer expresses a desire for its employees to travel to work quickly, it is entitled to assume that its employees will conduct themselves in a manner consistent with an ordinary standard of reasonable care, again, unless there is some reason to believe otherwise.

Plaintiff cites <u>Palmer v. Keene Forestry Ass'n</u>, 80 N.H. 68 (1922), to support her proposition that Kleen Laundry acted negligently when it requested DePetrillo to get to work quickly. In <u>Palmer</u>, an employer was found liable for a grass fire that started when one of its employees "carelessly [dropped a] lighted match[] in the dry grass." <u>Id.</u> at 69. The court explained that:

> . . . the defendant's liability depends on a finding
> that it had knowledge of the propensity of its servants
> to smoke, which habit they were likely to indulge in
> while at work in the plaintiff's field, and thus cause
> serious damage to the plaintiff's property. The

19

> question is, not whether the men in dropping lighted
> matches into the grass were acting within the scope of
> their authority, but whether the doing of the act was
> reasonably to be apprehended by the defendant.

Id. at 70.

Here, plaintiff has produced no facts tending to show that Kleen Laundry knew, or had reason to know, that DePetrillo had any propensity for negligent driving. Kleen Laundry could reasonably expect DePetrillo to act lawfully and appropriately under the circumstances. Plaintiff has offered no evidence to suggest that Kleen Laundry knew or should have known that DePetrillo would drive negligently on the morning of the accident. As a matter of law, defendant breached no duty owed to plaintiff. Defendant is entitled to judgment as a matter of law on Count III.

## CONCLUSION

Defendant's motion for summary judgment (document no. 28) is granted as to Counts II and III. The clerk of the court shall enter judgment in accordance with this order.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

April 18, 2005

cc:   Robert C. Dewhirst, Esq.
     Gregory M. Eaton, Esq.
     Edward R. Gargiulo, Esq.
     Paul B. Kleinman, Esq.
     Robert T. Mittelholzer, Esq.