The ESTATE OF Robert MURRAY and Grace Murray,
Plaintiffs,

v.

The TRAVELERS INSURANCE COMPANY, Defendant-
Appellant,

Hanne C. BARITT, Metropolitan Property and Casualty
Ins. Co., Wisconsin Physicians Service Ins. Corp.,
Donna Shalala, Secretary of the Dept. of Health &
Human Services, Administrator of Health Care
Financing Administration, Department of Health and
Human Services, We Care Nursing Services, Inc., St.
Paul Fire & Marine Ins. Co. and ABC Insurance Com-
pany, Defendants,

OLSTEN KIMBERLY QUALITYCARE, d/b/a Olsten Certified
Health Care Corp., Defendant-Respondent,†

OHIO CASUALTY INSURANCE CO., Defendant-Third-Party
Plaintiff-Co-Appellant,

v.

David R. MURRAY, Third-Party Defendant.

Court of Appeals

*No. 98–0497. Oral argument May 17, 1999.—Decided August
10, 1999.*

(Also reported in 601 N.W.2d 661.)

<hr>

†Petition to review denied.

On behalf of the defendant-appellant Travelers Insurance Company, the cause was submitted on the briefs of *John R. Pendergast, Jr.*, of *Crivello, Carlson, Mentkowski & Steeves, S.C.*, of Milwaukee, with oral argument by *John R. Pendergast, Jr.*

On behalf of the defendant-third-party plaintiff-co-appellant Ohio Casualty Insurance Company, the cause was submitted on the briefs of *Karyn Gimbel Youso* of *Mingo & Yankala, S.C.*, of Milwaukee, with oral argument by *Karyn Gimbel Youso.*

On behalf of the defendant-respondent, the cause was submitted on the brief of *Scott G. Thomas* of *Law Offices of Scott G. Thomas*, of Milwaukee, with oral argument by *Scott G. Thomas.*

Before Fine, Schudson and Curley, JJ.

CURLEY, J.   David Murray's automobile liability insurer, Travelers Insurance Company (Travelers),

and Ohio Casualty Insurance Company (Ohio), the underinsured motorist insurer for Robert Murray, a passenger in David's automobile, appeal the trial court's grant of summary judgment to Olsten Kimberly QualityCare, doing business as Olsten Certified Health Care Corporation (Olsten).[1] The appellants assert that the trial court erred in finding that Hanne Baritt, an Olsten physical therapist, was not acting within the scope of her employment when, while driving to a patient's home, she was involved in a car accident with David Murray, that injured David's passenger, Robert Murray. We reverse. We conclude that because Baritt's employment arrangement with Olsten did not provide her with a fixed place of employment, the holding in *DeRuyter v. Wisconsin Electric Power Co.*, 200 Wis. 2d 349, 546 N.W.2d 534 (Ct. App. 1996), *aff'd by an equally divided court*, 211 Wis. 2d 169, 565 N.W.2d 118 (1997), is inapplicable. Applying the general *respondeat superior* rules, we determine that Baritt was acting within the scope of her employment when she was involved in the automobile accident because travel was an essential element of her employment duties with Olsten and, consequently, at the time of the accident, her travel was actuated by a purpose to serve her employer.

## I. BACKGROUND.

Hanne Baritt had four part-time jobs; three of them were with home health care agencies, including We Care and Olsten. In the course of her work for Olsten, Baritt would typically schedule her own appointments with Olsten patients, using her home

---

[1] Robert Murray died during the pendency of this action, requiring his estate to be substituted as a party.

telephone. She would then advise Olsten of her schedule and travel to and from the homes of the patients in her own car to administer physical therapy to Olsten's patients. Her arrangement with Olsten called for Olsten to pay her a flat fee for each patient visit.[2] Olsten required Baritt to sign an automobile release which read, "I agree to hold the agency harmless in the event that there is an accident in which there is damage to my car or injury to its occupants." The document also required Baritt to agree not to transport Olsten's clients in her automobile in the course of her duties with Olsten. Olsten, although not requiring Baritt to travel by car, did insist that Baritt certify that she had insurance coverage for her automobile if she was going to use her vehicle in the performance of her duties with Olsten.

On February 16, 1994, while Baritt was driving directly from the home of a We Care patient to the home of an Olsten patient, she was involved in a car accident with David Murray. David's passenger, Robert Murray, was injured. Robert and his wife, Grace, sued Baritt, her automobile insurance company, and several other parties. Robert's insurer, Ohio, started a third-party action against David, asserting that Robert's injuries were a result of David's negligence. The plaintiffs subsequently filed two amended complaints adding We Care, Olsten, and their insurance companies as defendants, claiming that Baritt was acting within the scope of her employment when the accident occurred.

---

[2] The appellants argue that Olsten paid Baritt for her mileage. Baritt's deposition, although somewhat confusing, does not support that contention. It appears that Olsten paid Baritt a per-visit fee and Baritt kept a log of her mileage for tax purposes only.

In June 1996, the trial court granted summary judgment to We Care and denied the summary judgment motion brought by David and Travelers. Olsten, who was brought into the case later than the other defendants, then brought a summary judgment motion. The trial court originally denied the motion, but following the affirmance of *DeRuyter*, Olsten brought a motion for reconsideration of its summary judgment motion. The trial court heard Olsten's motion for reconsideration and granted Olsten's summary judgment motion. Both Ohio and Travelers appeal.

## II. ANALYSIS.

### Standard of Review

A grant of summary judgment is subject to *de novo* review by the appellate court. *See Sauk County v. Employers Ins. of Wausau*, 202 Wis. 2d 433, 438, 550 N.W.2d 439, 441 (Ct. App. 1996).

### A. The application of the *respondeat superior* doctrine in Wisconsin.

"Under the doctrine of *respondeat superior* an employer can be held vicariously liable for the negligent acts of his employees while they are acting within the scope of their employment." *Shannon v. City of Milwaukee*, 94 Wis. 2d 364, 370, 289 N.W.2d 564, 568 (1980). WIS J I—CIVIL 4035 defines the scope of employment:

> A servant is within the scope of his or her employment when he or she is performing work or rendering services he or she was engaged to perform and render within the time and space limits of

his or her authority and is actuated by a purpose to serve his or her master in doing what he or she is doing. He or she is within the scope of his or her employment when he or she is performing work or rendering services in obedience to the express orders or direction of his or her master, or doing that which is warranted within the terms of his or her express or implied authority, considering the nature of the services required, the instructions which he or she has received, and the circumstances under which his or her work is being done or the services are being rendered.[3]

The RESTATEMENT ( SECOND) OF AGENCY § 228(2) (1957) gives guidance as to when an employee is not operating within the scope of employment: "Conduct of a servant is not within the scope of employment if it is . . . too little actuated by a purpose to serve the master."

B. *DeRuyter* rule does not apply to the facts presented here.

At the hearing to reconsider Olsten's summary judgment motion, the trial court reluctantly ruled that the holding in *DeRuyter* required it to grant Olsten's motion.

*DeRuyter* says clearly, unequivocally, they're only in the scope of employment when the employer exercises control over the method or route of the employee's travel. And there is no factual dispute. There is nothing in that regard to suggest that her method or course or route of to and from the place is controlled by Olsten. It simply isn't there. And there is no factual dispute there.

---

[3] It should be noted that Wisconsin's Worker's Compensation Act, § 102.03(1)(c), STATS., defines "scope of employment" differently in suits seeking compensation.

In *DeRuyter*, this court determined that the employer could not be held vicariously liable for its employee's negligent driving resulting in the death of another driver. *DeRuyter*, 200 Wis. 2d at 367, 546 N.W.2d at 542. We noted that "an employee is not acting within the scope of employment while traveling to and from work," and concluded that the employee was not, therefore, within the scope of his employment when the accident occurred, despite the fact that at the time of the accident the employee was traveling to a required training session, was using a map supplied by his employer, was being paid a "temporary transfer allowance" due to his assignment away from his ordinary place of employment, and was subject to a "fitness for duty" requirement. *See id.* at 358–60, 546 N.W.2d at 538–39. *DeRuyter* held that an employer could only be found to be vicariously liable for an employee's negligent acts while commuting "when the employer exercises control over the method or route of the employee's travel to or from work." *Id.* at 361, 546 N.W.2d at 540.

Olsten submits that the holding in *DeRuyter* controls the outcome of this case. Olsten posits that the similarities between the circumstances in *DeRuyter* and those present here require application of the *DeRuyter* holding. Olsten successfully argued to the trial court that, under *DeRuyter*, Olsten was not liable for Baritt's negligent act while commuting because: Baritt had not yet started her duties for Olsten when the accident occurred, because she was on her way to the home of an Olsten patient; Olsten did not control the route she took to the patient's home; Olsten exercised no control over the time she selected to travel to the patient's home; and, finally, Olsten did not pay Baritt for her mileage or any other travel costs.

Travelers and Ohio, on the other hand, claim that the holding in *DeRuyter* does not control the outcome here because the facts are distinguishable from those found in *DeRuyter*. They argue that *DeRuyter* applies only to employees who are commuting to fixed places of employment and Baritt had no fixed place of employment. They submit that the nature of Baritt's employment with Olsten is more analogous to the facts found in *Fultz v. Lange*, 238 Wis. 342, 298 N.W. 60 (1941), where Lange, a traveling salesman who was involved in a car accident after starting his trip back home earlier than scheduled, was found to have been operating within the scope of his employment. The *Fultz* court reasoned that Lange's trip was taken for the sole purpose of furthering the employer's business. *See id.* at 345, 298 N.W. at 61. Travelers and Ohio argue that Baritt, like Lange, was also within the scope of her employment at the time of the accident, because she was furthering Olsten's business. We agree.

*DeRuyter* determined that an employer could be held vicariously liable for the negligent acts of an employee when commuting only if the employer exercised control over the method or route of the employee's travel. *See DeRuyter*, 200 Wis. 2d at 361, 546 N.W.2d at 540. While the *DeRuyter* rule retains its vitality, the facts here are distinguishable. The holding in *DeRuyter* is firmly rooted in the following maxim:

> Where an employee works for another at a given place of employment, and lives at home or boards himself, it is the business of the employee to present himself at the place of employment, and the relation of master and servant does not exist while he is going between his home and [his] place of employment.

827

*Id.* at 361, 546 N.W.2d at 540 (quoting *Geldnich v. Burg*, 202 Wis. 209, 210, 231 N.W. 624, 624 (1930)). Thus, before the *DeRuyter* rule can be applied, an employee must have a "given place of employment." We conclude the words "given place of employment" are synonymous with "fixed place of employment." Therefore, if an employee does not have a fixed place of employment, *DeRuyter*'s employer control test does not apply.

■ Olsten is in the business of providing home health care to clients. Olsten hired Baritt to travel to its patients' homes and administer physical therapy to them. At the direction of Olsten, Baritt used her home to make the appointments with Olsten patients and complete the necessary paperwork, but Baritt did not perform her other work duties at her home. Baritt was required to travel to the homes of Olsten patients to perform the physical therapy services for which she was paid. As a result, her workplace differed significantly from that of an employee who leaves each day for his or her fixed place of employment. Baritt had no fixed place of employment; her place of employment changed continuously with the various patients to whom she was assigned. Thus, the *DeRuyter* "employer control test" does not apply here.

C. <u>Baritt's employment situation resembles that of a traveling salesman</u>.

Having determined that Baritt's employment for Olsten was not subject to the *DeRuyter* holding, we next address the general *respondeat superior* principles set forth earlier to decide whether Baritt was within the scope of her employment when the accident occurred. We determine that Baritt's travel at the time

of the accident was actuated by a purpose to serve her employer, and thus, she was acting in the scope of her employment at the time of the accident. Relevant case law and a jury instruction support our conclusion.

■

As noted, an employer can be held responsible for an employee's negligence if the negligent act occurred when the employee was acting within the scope of his or her employment. While *DeRuyter* addresses the employer's liability for the commuting employee, an early Wisconsin case discusses employer liability for a traveling employee. In *Fultz*, the facts established that Lange was required to cover his assigned territory in his own vehicle; he was paid a salary and reimbursed for his expenses. He was responsible for setting up his weekly appointments and mailing his route to his employer. Lange was in an automobile accident after he started his trip home ahead of the predetermined scheduled time. The supreme court found that the homeward bound trip was within the scope of his employment because the trip was conducted "for no other purpose than to promote the employer's business." *Fultz*, 238 Wis. at 345, 298 N.W. at 61. The court concluded, "[I]t is clear under the facts of this case that the conduct of Lange was directly connected with his service and during the authorized period." *Id.*

Baritt's situation, while not entirely analogous to that of the traveling salesman found in *Fultz*, is, nevertheless, sufficiently similar to warrant the same result. Here, Baritt's employer was a home health care agency. Like Lange, Baritt's duties required her to set up her own appointments with Olsten patients and notify her employer of her schedule. Olsten also required her to travel to various sites to carry out her duties as a physical therapist. Although she was not

paid for the expenses of travel, she was paid a flat fee for each visit. We determine that Baritt's duties made travel necessary and she was at the accident location "for no other purpose than to promote the employer's business." Consequently, Baritt was within the scope of her employment at the time of the accident.

We adopt the succinct analysis found in Ohio's brief:

> Hanne Baritt's employment relationship with Olsten was premised on her ability to travel to the homes of those Olsten clients. If Olsten's employees did not travel by means of their own cars, Olsten would likely have no services to offer. During the course of her travel, which directly benefited Olsten, Ms. Baritt was involved in a car accident. Her travel was not only expected but approved by Olsten at the time of the accident. She was within the time and place requirements of her relationship, was on a direct route to her appointment, and her purpose for being on that particular route was to further the interests of her employer and its clients. Ms. Baritt's conduct satisfies all of the elements required to sustain a finding that she was within the scope of her employment at the time of her accident under principles of *respondeat superior*.

A portion of WIS J I—CIVIL 4045, entitled "Servant: Scope of Employment While Traveling," also supports our interpretation: "If the work of the employee for his or her employer creates the necessity for travel, the employee is in the course of his or her employment while traveling on the trip . . . ."

Here, Olsten hired Baritt with the anticipation that she would travel to Olsten's patients. Olsten created the necessity for travel. Baritt's sole purpose for

being where she was at the time of the accident was job related.

In sum, we conclude that Baritt had no fixed place of employment, and thus, was not subject to the *DeRuyter* employer control test. Olsten created the necessity for travel because travel was essential for Baritt to carry out her duties. Thus, Baritt's travel was actuated by a purpose to serve her employer when the accident occurred. Accordingly, we conclude, as a matter of law, that Baritt was acting within the scope of her employment at the time of the car accident and we reverse the grant of summary judgment to Olsten and grant summary judgment to the appellants.[4]

*By the Court.*—Judgment reversed.

---

[4] Due to the grant of summary judgment to We Care, and the fact that it was never appealed, we decline to address the question of whether Baritt was also acting within the scope of her employment for We Care when the accident occurred.