168 P.3d 155 (2007)
2007-NMCA-122
Sue LESSARD and Joel Lessard, Plaintiffs-Appellants,
v.
CORONADO PAINT AND DECORATING CENTER, INC., a New Mexico corporation, Defendant-Appellee.
No. 26,005.
Court of Appeals of New Mexico.
June 20, 2007.
Certiorari Granted September 17, 2007.
*157 Pierre Levy, Jane B. Yohalem, Santa Fe, NM, for Appellants.
Miller Stratvert, P.A., Alice Tomlinson Lorenz, Sheehan, Sheehan & Stelzner, P.A., Craig T. Erickson, Albuquerque, NM, for Appellee.
Certiorari Granted, No. 30,537, September 17, 2007.

OPINION
CASTILLO, Judge.
{1} In this case, we review the entry of summary judgment in favor of Defendant, Coronado Paint and Decorating Center (Coronado), on the claims of respondeat superior and negligent hiring or retention brought by Plaintiffs, Sue Lessard (Lessard) and her husband, Joel Lessard. Summary judgment was granted by the trial court on grounds that employee Barry Fennell (Fennell) was acting outside the scope of his employment as a matter of law and that liability was thus precluded under both theories. In regard to the claim based on a theory of respondeat superior, we conclude that under the circumstances of this case, Fennell was acting outside the scope of his employment as a matter of law. In regard to the claim for negligent hiring or retention, we conclude that Coronado owed a duty to the motoring public and that any questions regarding the scope or breach of that duty, as well as questions of proximate cause, must be reserved for the fact-finder. Accordingly, we affirm in part, reverse in part, and remand for further proceedings in light of this opinion.
I. BACKGROUND
{2} This case arises out of an automobile accident between Lessard and Fennell. Lessard suffered serious injuries when Fennell's car crossed over the center line onto the wrong side of the road, struck Lessard's car, and thus caused it to roll. Filing a complaint against Coronado, as well as other parties, Lessard and her husband alleged that Coronado was liable under theories of respondeat superior and negligent hiring and retention. Upon Coronado's motion, the trial court granted summary judgment to Coronado on both causes of action and relied on Coronado's argument that an employer is not liable for the acts of an employee who is returning home from work at the end of the day.
{3} For the purposes of the summary judgment motion, Coronado asked the trial court to assume, without deciding, that Fennell was its employee. Coronado set out the following facts as undisputed:

*158 1. On November 20, 2000, . . . Lessard and . . . Fennell were involved in an auto accident on Rancho Viejo Boulevard, in Santa Fe, New Mexico.
2. At the time of the accident, . . . Fennell was driving a vehicle owned by Clayton Gober.
3. At the time of the accident, . . . Fennell was on his way home from work, having left work at around 4:35 to 4:40 p.m.[,] and had traveled about a mile from the home building development.
4. The accident occurred at approximately 4:45 p.m.
5. Coronado . . . contracted with . . . Fennell to perform tile repair services on the Rancho Viejo home building development, and a couple of other locations.
6. During the time . . . Fennell worked for Coronado prior to the accident, he drove Mr. Gober's Toyota pickup truck.
7. Coronado . . . never lent . . . Fennell a vehicle, and . . . Fennell never drove one of Coronado[ ]'s company vehicles.
8. The manner in which . . . Fennell was to get to job[]sites was never discussed with Coronado[.]
(Citations omitted.) Based on these facts, Coronado argued that summary judgment was proper on the claim for respondeat superior because an employer is not liable for the negligence of employees who are simply traveling home after work is over for the day. In addition, Coronado argued that summary judgment was proper on the negligent hiring and retention claim because no connection existed between Coronado's business and Lessard and because hiring and retaining Fennell did not proximately cause Lessard's injuries.
{4} In her response, Lessard disputed facts 3, 5, 7, and 8 and qualified fact 6. We address Lessard's contentions in regard to facts 3, 6, 7, and 8 together because each contention tends to provide additional facts, rather than create a dispute about the fact offered by Coronado. In regard to fact 3, Lessard asserted that "[w]hile one possible construction of the events is that Fennell was on his way home from work, another is that Fennell had left the last job he was sent to by Coronado for the day." Our review of the record reveals that Fennell testified he was on his way home from work: "I was just getting off of work. I was going home." Lessard's contention is based on an additional fact-Fennell, on his way home from work, had just left the location of his last job for Coronado that day. Similarly, in regard to fact 6, Lessard admits that Fennell drove Gober's truck but further states that following the accident, Fennell drove a truck that was purchased for him by Coronado employee Miles Poteet (Poteet) after he bailed Fennell out of jail. Likewise, in regard to fact 7, Lessard disputed in part Coronado's assertion that it never loaned Fennell a vehicle or provided him with a company vehicle; Lessard added that after the accident, Poteet purchased a vehicle for Fennell, who in turn purchased the vehicle from Poteet. Further, in regard to fact 8, Lessard disputed Coronado's assertion that Coronado and Fennell never discussed the manner in which he would travel to job sites. Lessard contended that the facts show Coronado expected Fennell to drive to job sites to perform its repair work. Specifically, Lessard asserted that Poteet knew Fennell drove because Poteet regularly got materials ready for Fennell to pick up and that Poteet's actions in bailing Fennell out of jail and purchasing another truck for him were evidence that Coronado expected Fennell to drive to job sites. We conclude that Lessard's contentions, in regard to these undisputed facts set forth by Coronado, do not create issues of fact regarding Coronado's assertions, but rather consist of additional facts to be considered in our analysis. We discuss the relevance of these facts as they become pertinent to our discussion.
{5} Finally, in regard to fact 5, Lessard disputed Coronado's assertion that Coronado had contracted with Fennell. Lessard contends that a disputed fact exists regarding whether Fennell was an employee or a contractor. As observed earlier, however, Coronado stipulated that Fennell was an employee for the purposes of the summary judgment motion; thus, we conclude that *159 this fact, though disputed, is not material to our discussion.
{6} Lessard offered additional statements of undisputed fact regarding Coronado's acts and omissions, as well as Fennell's driving record and drug use. Germane to our discussion are Lessard's statements that "Coronado specifically hired Fennell to drive to its customers' locations and perform repairs to tile work" and that Coronado depended on Fennell's driving to various job sites. Further, Lessard asserted that Poteet knew that Fennell drove, expected him to get to the job sites to perform repairs, and discussed with Fennell what supplies were needed in order to get the materials ready for Fennell to pick up. In addition, Lessard relied on the fact that Coronado gave Fennell a cell phone to use for communicating with Coronado and scheduling appointments with Coronado's customers. Later, in a supplemental brief requested by the trial court, Lessard relied on a weekly installation contract in support of her argument that Fennell's employment was conditioned on his use of a vehicle to drive from job site to job site. The contract provided that Fennell would insure the vehicle he used for work and that he would name Coronado as an additional insured.
{7} Thus, Lessard argued that genuine issues of material fact preclude summary judgment on both claims because factual issues exist regarding exceptions to the going and coming rule and regarding whether Coronado knew or should have known that Fennell was unfit to drive. After a hearing on the motion and supplemental briefing, the trial court found that no genuine issues of material fact exist and awarded summary judgment to Coronado, based on the arguments presented in its motion.
II. STANDARD OF REVIEW
{8} "Summary judgment is a drastic measure that should be used with great caution." Narney v. Daniels, 115 N.M. 41, 47, 846 P.2d 347, 353 (Ct.App.1992). Summary judgment is proper only when the material facts are undisputed and the remaining issues are the legal effects of those facts. Rule 1-056 NMRA; Richardson v. Glass, 114 N.M. 119, 122, 835 P.2d 835, 838 (1992). We review a grant of summary judgment de novo. Upton v. Clovis Mun. Sch. Dist., 2006-NMSC-040, ¶ 7, 140 N.M. 205, 141 P.3d 1259. We view the evidence and make all reasonable inferences in favor of the nonmoving party-in favor of granting a trial on the merits. Id.; Narney, 115 N.M. at 47, 846 P.2d at 353.
III. DISCUSSION
{9} As a preliminary issue, we address the parties' use of the term "going and coming rule." Coronado used the term in the motion for summary judgment, and both parties have used the term throughout the pleadings below and in the briefs to this Court. As observed by Lessard in her brief in chief, New Mexico cases have referred to the going and coming rule only in workers' compensation cases. See, e.g., Ramirez v. Dawson Prod. Partners, Inc., 2000-NMCA-011, ¶ 7, 128 N.M. 601, 995 P.2d 1043. Ramirez discussed the going and coming rule in the workers' compensation arena: "[W]orkers injured while traveling between home and work are generally not eligible for compensation." Id. (observing that several exceptions exist); see also NMSA 1978, § 52-1-19 (1987) (excluding from compensation "injuries to any worker occurring while on his way to assume the duties of his employment or after leaving such duties"). A similar rule has been judicially established in the context of tort claims. Our Supreme Court held in Nabors v. Harwood Homes, Inc., 77 N.M. 406, 423 P.2d 602 (1967), "that an employee enroute [sic] to, or returning from, his place of employment, using his own vehicle[,] is not within the scope of his employment absent additional circumstances evidencing control by the employer at the time of the negligent act or omission of the employee." Id. at 408, 423 P.2d at 603; see also Zamora v. Foster, 84 N.M. 177, 178, 500 P.2d 1001, 1002 (Ct. App.1972). We recognize that similar principles may support the rule in both contexts. However, the policies served by the two areas of law differ, and application of the rule in each context has produced analyses that differ from each other. Compare Ramirez, 2000-NMCA-011, ¶¶ 1-2, 5, 7-10, 128 N.M. 601, 995 P.2d 1043 (addressing workers' compensation awards to workers who were injured *160 in an accident occurring while one worker was driving them home from the job site, located ninety miles away, and discussing the application of the traveling employee exception to the going and coming rule, in light of the purposes of the workers' compensation statutes), with Richardson, 114 N.M. at 122, 835 P.2d at 838 (concluding that an employer was not responsible for a third party's injuries, which resulted from an employee's negligence, because the plaintiff did not dispute the fact that the employee was acting outside the scope of his employment and because the plaintiff failed to establish that the employer exercised any control over the employee while he drove back to work after lunch). In an effort to prevent any confusion that might arise from merging the issue of scope of employment as it applies to workers' compensation and as it applies to tort law, we refrain from using the term "going and coming rule" in this opinion. We rely on the terminology and analysis historically used by our courts when addressing respondeat superior and negligence in hiring and retention claims. We address each claim below.
A. Respondeat Superior
{10} On appeal, Lessard argues that genuine issues of material fact exist regarding whether Fennell was acting within the scope of his employment, which would trigger liability for Coronado under the theory of respondeat superior. She frames the question posed as "whether there is an exception to the [going and coming] rule when an employer, either explicitly or implicitly, requires an employee to bring a personal vehicle to work for use in performing essential job duties." In turn, Coronado answers that summary judgment in its favor was proper because Lessard failed to show that Fennell was acting in furtherance of Coronado's business and subject to its control. Thus, Coronado contends that Fennell was not acting within the scope of his employment and that Coronado cannot be held vicariously liable for Fennell's actions.
{11} Under the doctrine of respondeat superior, an employer can be held vicariously liable for the negligent actions of an employee who is acting within the scope of his employment. Medina v. Graham's Cowboys, Inc., 113 N.M. 471, 475, 827 P.2d 859, 863 (Ct.App.1992). A determination regarding scope of employment is a question of fact for the jury when sufficient evidence exists to show that the employee was acting within the scope of his employment. McCauley v. Ray, 80 N.M. 171, 180, 453 P.2d 192, 201 (1968); Medina v. Fuller (Fuller), 1999-NMCA-011, ¶ 22, 126 N.M. 460, 971 P.2d 851 (stating that "[g]enerally, whether an employee is acting in the course and scope of employment is a question of fact," unless only one reasonable conclusion can be drawn from the facts presented). This Court has rejected the use of any bright-line test for determining if an employee was acting within the scope of his employment. Narney, 115 N.M. at 48, 846 P.2d at 354. Instead, we use a multifactored test to consider scope of employment. Narney, 115 N.M. at 48, 846 P.2d at 354.
{12} In Narney, we adopted a four-point test to determine whether an employee's acts were performed within the scope of employment.
An employee's action, although unauthorized, is considered to be in the scope of employment if the action (1) is the kind the employee is employed to perform; (2) occurs during a period reasonably connected to the authorized employment period; (3) occurs in an area reasonably close to the authorized area; and (4) is actuated, at least in part, by a purpose to serve the employer.
Id. at 49, 846 P.2d at 355; see also Restatement (Third) of Agency § 7.07(2) (2006). Further guidance is provided in the uniform jury instruction.
An act of an employee is within the scope of employment if:
1. It was something fairly and naturally incidental to the employer's business assigned to the employee, and
2. It was done while the employee was engaged in the employer's business with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee.
*161 UJI 13-407 NMRA; see also Childers v. S. Pac. Co., 20 N.M. 366, 372-73, 149 P. 307, 308, (1915) ("But in general terms it may be said that an act is within the course of employment if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill[-]advisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account." (internal quotation marks and citation omitted)). Despite the seemingly straightforward definition provided by the jury instruction, our courts have repeatedly observed that "it is impossible to state the rule . . . briefly and comprehensively so as to make it clearly applicable to all cases, because of the ever-varying facts of each particular case." Nabors, 77 N.M. at 407, 423 P.2d at 603; see also Bolt v. Davis, 70 N.M. 449, 463, 374 P.2d 648, 658 (1962); Tinley v. Davis, 94 N.M. 296, 297, 609 P.2d 1252, 1253 (Ct.App.1980) ("To define `the course and scope of employment' is variable.").
{13} We turn now to the rule regarding scope of employment in automobile accident cases. Several New Mexico cases have addressed the issue of scope of employment when an employee, going to or from work in his own automobile, has had an automobile accident. See, e.g., Richardson, 114 N.M. 119, 835 P.2d 835; Fuller, 1999-NMCA-011, 126 N.M. 460, 971 P.2d 851; Zamora, 84 N.M. 177, 500 P.2d 1001. As noted earlier, the general rule precludes imposing vicarious liability on an employer for its employee's negligent use of a personal vehicle while driving to and from work. See Nabors, 77 N.M. at 408, 423 P.2d at 603. In Nabors, the employee worked as a supervisor for a home construction business. Id. at 407, 423 P.2d at 602. The employee negligently caused a car accident on a Sunday while he was driving his personal truck to the employer's housing project. Id. at 406-07, 423 P.2d at 602. The employee sometimes used his personal truck in his capacity as a supervisor, but he had not been ordered or directed to go to the housing site on this particular day. Id. at 407, 423 P.2d at 602. Our Supreme Court held that there was substantial evidence to support the lower court's finding that the employee was not acting within the scope of his employment when the accident occurred. Id. at 408, 423 P.2d at 603. The Court observed that "the employee had not arrived at the construction site and he was not furthering the employer's business at the time of the accident." Id. at 407, 423 P.2d at 603. The Court relied on the Restatement (Second) of Agency § 239 (1958) for the proposition that an employer is not liable for injuries resulting from the employee's negligent use of an instrumentality over which the employer has no right of control. Nabors, 77 N.M. at 408, 423 P.2d at 603. Thus, the Court held that without "additional circumstances evidencing control by the employer at the time of the negligent act or omission of the employee," an employee is not within the scope of his employment while traveling to or from his place of employment in his own vehicle. Id.
{14} In reaching the conclusion that the question of control was essential to the issue, the Court in Nabors relied on Bolt, 70 N.M. at 463-65, 374 P.2d at 658-59. Nabors, 77 N.M. at 407-08, 423 P.2d at 603. Bolt held that the plaintiff failed to show that the employee had express or implied authority to make use of his personal car and that the employer could thus not be held liable. 70 N.M. at 464, 374 P.2d at 658. Bolt quoted a case from a Maryland court in a discussion of the general rule:
[A] master will not be held responsible for negligent operation of a servant's automobile, even though engaged at the time in furthering the master's business, unless the master expressly or impliedly consented to the use of the automobile, and had the right to control the servant in its operation, or else the use of the automobile was of such vital importance in furthering the master's business that his control over it might reasonably be inferred.
Id. (emphasis omitted) (quoting Estate of Gallagher v. Battle, 209 Md. 592, 122 A.2d 93, *162 97 (1956)). We read Bolt as identifying three circumstances that must exist in order to impose vicarious liability on an employer for an employee's negligent actions in driving a personal vehicle to and from work: (1) the employer must expressly or impliedly consent to the use of the vehicle; (2) the employer must have the right to control the employee in his operation of the vehicle, or the employee's use of the vehicle must be so important to the business of the employer that such control could be inferred; and (3) the employee must be engaged at the time in furthering the employer's business. See 70 N.M. at 464, 374 P.2d at 658; see also Morris v. Cartwright, 57 N.M. 328, 332, 258 P.2d 719, 722 (1953) ("It is fundamental that liability of the master for the use of an automobile by the servant is created only when it appears that its use is with knowledge and consent of the master and that it is used within the scope of employment of the servant and to facilitate the master's business.").
{15} In light of the discussion in Bolt, we look at Nabors with fresh eyes. We read the holding in Nabors to say that there was substantial evidence that the employer did not control the employee's vehicle and that the employee was thus not acting in the scope of his employment while traveling to the job site. 77 N.M. at 408, 423 P.2d at 603. While we do not disagree with the holding under the facts of that case, we observe that it appears to conflate the three questions pertinent to our analysis in the instant case. In doing so, Nabors reduces the test for scope of employment to a question of control generally and thereby obviates the factors ordinarily relevant to the scope of employment determination. We believe that the threefold analysis is the better approach under the facts of our case. Thus, by asking the following three questions, we determine if Fennell was acting within the scope of his employment. Did Coronado consent to the use of the vehicle driven by Fennell? Did Coronado have the right to control Fennell's operation of the vehicle, or was the use of Fennell's vehicle so important to Coronado's business that control could be inferred? Was Fennell acting in furtherance of Coronado's business at the time of the accident?
{16} To find Coronado liable for Fennell's negligent actions, each question must be answered in the affirmative. We examine the facts in our case to determine whether summary judgment for Coronado was appropriate on the respondeat superior claim.
1. Consent to Use
{17} Viewing the facts in favor of Lessard as the nonmoving party, we conclude that sufficient evidence exists from which a jury could find that Coronado consented to Fennell's use of his vehicle. Fennell was hired to repair tile installations in various homes throughout a housing development and at other sites in the vicinity, which required him to travel from job site to job site. Coronado did not provide any other transportation for Fennell or for the materials. Fennell testified that he used the vehicle to pick up materials from Coronado after he had discussed the job needs with Poteet and that Fennell regularly visited more than one job site in one day. In addition, Poteet procured another vehicle specifically for Fennell after the accident. From these facts, a jury could reasonably infer that Coronado consented to Fennell's use of his personal vehicle to travel from job site to job site in the performance of his duties.
2. Control of the Instrumentality
{18} Similarly, we conclude that Coronado's control over the operation of the vehicle could be implied in these circumstances. Use of Fennell's personal vehicle could be considered essential to the performance of his duties as an employee because he was required to drive from job site to job site, even though Coronado did not provide him with a vehicle. See Bolt, 70 N.M. at 464, 374 P.2d at 658 ("[T]he use of the automobile was of such vital importance in furthering the master's business that his control over it might reasonably be inferred." (emphasis, internal quotation marks, and citation omitted)). Moreover, Coronado's weekly payment contract with Fennell required him to insure the vehicle used in the performance of his duties and to name Coronado as an additional insured. Thus, the question of control over the operation of the vehicle is for the *163 fact-finder. We now consider the final prong of our analysis-whether Fennell was engaged in furthering Coronado's business at the time.
3. Furthering Coronado's Business
{19} In the third step of our analysis, we ask if Fennell was engaged at the time in furthering Coronado's business. The evidence in the record does not support Lessard's contention that Fennell's conduct at the time of the accident was in furtherance of Coronado's business. The only relevant evidence in this respect is Fennell's testimony that he was "just getting off work," that he was going home, and that he was heading home by a direct route at the time of the accident. Lessard asserts that Coronado provided Fennell with a cell phone to "keep in touch with Coronado." However, Lessard neither made allegations nor offered any evidence that could lead a reasonable jury to infer that Fennell was on call or otherwise engaged in using the cell phone to further Coronado's interest at the time of the accident. Because Lessard has failed to present evidence that would support an inference that Fennell's conduct at the time was in furtherance of Coronado's business, we conclude as a matter of law that no jury could reasonably infer that Fennell was acting within the scope of his employment.
{20} Consideration of the jury instruction supports the conclusion we have reached in our three-prong analysis. Because Fennell's duties required him to drive from job site to job site, a jury could reasonably infer that his negligent conduct was fairly and naturally incidental to the employer's business assigned to the employee. See UJI 13-407(1). However, we cannot conclude from the evidence in the record that Fennell, at the time of the accident, was acting in any part to further Coronado's interests under these facts. As noted in the previous paragraph, the only evidence regarding the reasons for Fennell's actions at the time of the accident was his testimony that he was driving home. Thus, we conclude that Fennell's conduct arose entirely from this "external, independent and personal motive." UJI 13-407(2); see also Restatement (Third) of Agency § 7.07 (discussing scope of employment). Lessard has provided no evidence from which a jury could reasonably infer otherwise. We therefore affirm the trial court's grant of summary judgment in favor of Coronado on the respondeat superior claim.
{21} Lessard cites to several cases from other jurisdictions in support of her argument that a reasonable jury could conclude that Coronado is vicariously liable under the facts of this case. Considering our analysis above based on New Mexico law, we are not convinced that these out-of-state cases are applicable. We specifically address the three cases upon which Lessard relies most heavily. We recognize that the facts in Carter v. Reynolds, 175 N.J. 402, 815 A.2d 460 (2003), and Huntsinger v. Fell, 22 Cal.App.3d 803, 99 Cal.Rptr. 666 (Ct.App.1972), are very similar to the facts in our case. Both cases involve employees like Fennell, who were required to use their vehicles in the performance of their job duties and whose negligent actions occurred on the way home from work. Huntsinger, 99 Cal.Rptr. at 667; Carter, 815 A.2d at 462. Our review of Carter and Huntsinger leads us to conclude, however, that these cases are distinguishable, based on differences in the law of each jurisdiction. The third case, Murray v. Travelers Insurance Co., 229 Wis.2d 819, 601 N.W.2d 661 (Ct.App. 1999), is distinguishable on its facts. We discuss each case below.
{22} In Carter, the Supreme Court of New Jersey held that the employee came within the "required-vehicle exception" to the general rule precluding vicarious liability. 815 A.2d at 469-70. The required-vehicle exception, which arose from workers' compensation law, had been previously recognized in two New Jersey tort cases. Id. at 467. The court in Carter reasoned that "[d]riving a required vehicle . . . satisfies the control and benefit elements of respondeat superior" because the employee is providing an "essential instrumentality" to perform the employer's work and because "the employer benefits by not having to have available an office car and yet possessing a means by which off-site visits can be performed by its employees." Id. at 468 (emphasis, internal quotation marks, and citation omitted). Thus, the *164 court concluded that the employee's use of her own vehicle "to advance her employer's business interests fell within the dual purpose, required-vehicle exception to the going and coming rule and placed her squarely . . . within . . . the scope of her employment at the time of the accident." Id. at 469; see also Clark v. Elec. City, 90 N.M. 477, 480, 565 P.2d 348, 351 (Ct.App.1977) (discussing the dual purpose rule in workers' compensation cases). The court in Carter relied on New Jersey precedent, which established "that one who expects to derive a benefit or advantage from an act performed on his behalf by another must answer for any injury that a third person may sustain from it." 815 A.2d at 463.
{23} The Huntsinger court relied on a similar rationale when it concluded that substantial evidence existed from which the jury could have found that the employee's "use of his vehicle was an implied or express condition of his employment." 99 Cal.Rptr. at 668. This arrangement constituted a benefit to the employer; thus, the question of scope of employment was for the jury. Id. at 670. The court emphasized that the principal justification for vicarious liability under the doctrine of respondeat superior is the employer's ability to spread risk and carry the costs as costs of doing business. Id. at 668. Thus, the court rationalized importing the exception previously applied in workers' compensation cases. See id. at 668-69. The court concluded that "when a business enterprise requires an employee to drive to and from its office in order to have his vehicle available for company business during the day, accidents on the way to or from the office are statistically certain to occur eventually, and, the business enterprise having required the driving to and from work, the risk of such accidents are risks incident to the business enterprise." Id. at 670.
{24} Both Carter and Huntsinger impose liability on the basis of benefit to the employer. We acknowledge that benefit to the employer is one factor that has been used in the context of workers' compensation to determine whether a worker's injury "arise[s] out of and in the course of employment." See Ramirez, 2000-NMCA-011, ¶ 17, 128 N.M. 601, 995 P.2d 1043 ("The injury must, however, arise out of and in the course of employment, which means that it must occur during the commission of an activity that is reasonable and foreseeable both as to its nature and manner of commission, and must be of some benefit to the employer."). While we agree that the benefit analysis works in the workers' compensation area, we do not believe New Mexico law allows expansion of this benefit analysis in tort law. In addition, the court in Huntsinger relied on a broad theory of enterprise liability. While we recognize that a theory of enterprise liability, including benefit to the employer, may support the doctrine of respondeat superior, see generally Medina, 113 N.M. at 475-76, 827 P.2d at 863-64 (discussing justifications for the doctrine of respondeat superior), we do not read New Mexico law to support a finding that an employee is acting within the scope of his employment under the facts of this case. Cf. Fuller, 1999-NMCA-011, ¶¶ 19-20, 126 N.M. 460, 971 P.2d 851 (discussing with approval a California case in which the court relied on benefit to the employer and the enterprise liability theory); Carter, 815 A.2d at 469-70 (declining to adopt California's "broad enterprise liability theory"). As discussed earlier, our review of pertinent New Mexico law reveals a focus on furthering the business of the employer at the time the negligent act occurred. Therefore, without evidence that Fennell was furthering Coronado's business at the time of the accident, we cannot conclude that Fennell was acting within the scope of his employment solely on the basis of benefit to the employer and the enterprise liability theory. See Fuller, 1999-NMCA-011, ¶¶ 1-2, 21, 126 N.M. 460, 971 P.2d 851 (concluding that the employee, who was in an accident about ten minutes after she left work to go home, was within her scope of employment as a matter of law, since she was "on duty and doing her employer's business on her way to and from work because she was in her patrol unit, with her radio on, with badge and gun, and ready to respond to calls, which, after all, is the business of the Sheriff's Department"). We leave the expansion of tort liability under these circumstances to our legislature and Supreme Court.
*165 {25} Finally, Lessard relies on Murray, 229 Wis.2d 819, 601 N.W.2d 661. In Murray, the court concluded that the general rule precluding employer liability for accidents occurring while an employee traveled to or from work was not applicable because the employee did not have a fixed place of employment. Id. at 662-64. The court then determined that the employee was acting within the scope of her employment when the car accident occurred on the way to a patient's home "because travel was an essential element of her employment duties . . . and, consequently, at the time of the accident, her travel was actuated by a purpose to serve her employer." Id. at 662 (emphasis added). In our case, we recognize that Fennell's job duties are similar to those in Murray, such that Fennell's travel could be considered an essential element of his duties. As discussed in paragraph 19, however, Lessard has presented no evidence that Fennell's travel at the time of the accident was in furtherance of Coronado's business or, in other words, actuated by a purpose to serve Coronado.
B. Negligent Hiring and Retention
{26} Lessard disputes Coronado's assertion that the going and coming rule precludes liability for the negligent hiring and retention claim. She contends that this approach is not consistent with New Mexico negligence law and that the appropriate analysis requires this Court to address duty, breach of duty, proximate cause, and cause-in-fact of the plaintiff's damages. Lessard asserts that as a matter of law, Coronado owes a duty to her because Coronado, as an employer who hired an employee to drive, owes a duty to members of the motoring public. She contends that resolution of the issue is a jury question. In response, Coronado argues that as a matter of law, it has no duty to Lessard because no authority creates, and public policy does not support, a duty running from Coronado to Lessard. Under the circumstances of this case, we agree with Lessard.
{27} "Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181; see also Payne v. Hall, 2004-NMCA-113, ¶ 17, 136 N.M. 380, 98 P.3d 1030 (stating that negligence requires proof of "duty, breach of that duty by failing to conform to the required standard, proximate cause, and loss or damage"), rev'd on other grounds, 2006-NMSC-029, ¶ 2, 139 N.M. 659, 137 P.3d 599. Determining the existence of a duty is a question of law for the court, Herrera, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181, whereas breach of duty and proximate cause are questions of fact for the jury. Id. ¶¶ 8, 33.
{28} Negligence in hiring or retention is based on the employer's negligent acts or omissions in hiring or retaining an employee when the employer knows or should know, through the exercise of reasonable care, that the employee is incompetent or unfit. F & T Co. v. Woods, 92 N.M. 697, 699, 594 P.2d 745, 747 (1979); see also Valdez v. Warner, 106 N.M. 305, 307, 742 P.2d 517, 519 (Ct.App.1987) ("In order to support an instruction on negligent hiring and retention, there must be evidence that the employee was unfit, considering the nature of the employment and the risk he posed to those with whom he would foreseeably associate, and that the employer knew or should have known that the employee was unfit." (citation omitted)); Restatement (Third) of Agency § 7.05(1) (2006) ("A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent."). An employer may be held liable for negligent hiring or retention, even if the employer is not vicariously responsible for the employee's negligent acts under a theory of respondeat superior. Los Ranchitos v. Tierra Grande, Inc., 116 N.M. 222, 228, 861 P.2d 263, 269 (Ct.App.1993). In our case, Lessard claimed that if Coronado had inquired, it would have discovered that Fennell's driver's license had been suspended for his failure to pay two car-accident  related *166 judgments and that Fennell had numerous moving violations.
{29} Here, we recognize that the parties did not expressly argue the question of duty and foreseeability in their pleadings below, but rather focused on the question of whether the going and coming rule precluded liability on both claims. The issue of duty is implicit, however, in the arguments made below, and both parties expressly address the issue on appeal. Moreover, the trial court's decision can be interpreted as a determination that the going and coming rule precluded the existence of a duty in these circumstances. We therefore begin our analysis by discussing duty.
{30} A duty may exist based on statutory law; based on common law that has created an affirmative duty toward a specific individual or group of individuals; or based on a general negligence standard, which requires an individual to exercise reasonable care in his dealings and activities with the public. Calkins v. Cox Estates, 110 N.M. 59, 62 n. 1, 63, 792 P.2d 36, 39 n. 1, 40 (1990) (relying on statute and common law and concluding that the plaintiff was owed a duty based on the landlord-tenant relationship); see also Spencer v. Health Force, Inc., 2005-NMSC-002, ¶¶ 10-11, 137 N.M. 64, 107 P.3d 504. Lessard concedes that Coronado does not have a statutory duty under these facts. However, an employer can be held liable for negligent hiring or retention under the common law duty to "members of the public whom the employer might reasonably anticipate would be placed in a position of risk of injury as a result of the hiring." Spencer, 2005-NMSC-002, ¶ 19, 137 N.M. 64, 107 P.3d 504 (internal quotation marks and citation omitted). Determining whether a duty exists in a particular case is a two-step procedure. First, we must consider foreseeability as to a particular plaintiff and a particular harm. Chavez v. Desert Eagle Distrib. Co. of N.M., LLC, 2007-NMCA-018, ¶ 16, 141 N.M. 116, 151 P.3d 77, cert. denied, 2007-NMCERT-001, 141 N.M. 164, 152 P.3d 151. If foreseeability exists, we then consider public policy to determine whether imposing a duty is supported by law. Id. ¶ 25.
{31} The district court agreed with Coronado's argument that it did not owe a duty to Lessard under these facts. We do not agree. First, Lessard was a foreseeable plaintiff because Coronado could reasonably anticipate that its employee, who was required to drive between jobs, might have a car accident with someone on the road during the workday. See id., 2007-NMCA-018, ¶ 17, 141 N.M. 116, 151 P.3d 77 (stating that foreseeability is satisfied with a showing of "what one might objectively and reasonably expect to occur" (internal quotation marks and citation omitted)). Second, public policy considerations give recognition and effect to Coronado's obligation to people who might come into contact with its employee on the road. See Herrera, 2003-NMSC-018, ¶ 9, 134 N.M. 43, 73 P.3d 181 (explaining that duty comprises foreseeability of the plaintiff and the determination that the defendant's obligation is one to which the law will give recognition and effect).
{32} Lessard asserts that NMSA 1978, § 66-5-42 (1978) is an expression of legislative intent that supports the existence of a duty to investigate under these circumstances. As we discuss below, we conclude that Section 66-5-42 supports the existence of a duty to protect the motoring public; whether the scope of that duty includes investigation into Fennell's driving capabilities or licensing, under these circumstances, is a question for the jury.
{33} We agree with Coronado that Lessard failed to make any argument based on Section 66-5-42 in the court below. This failure, however, does not preclude us from considering whether Section 66-5-42 and the public policy expressed therein provides support for a duty in this case. See Spencer, 2005-NMSC-002, ¶¶ 19-20, 137 N.M. 64, 107 P.3d 504 (noting that "duty is a question of policy based upon statutes, precedent, or other principles of law" and that a particular statute evinced a legislative determination "that the disabled warrant special protection"); Torres v. State, 119 N.M. 609, 612, 894 P.2d 386, 389 (1995) (stating that it is the particular domain of the legislature to make public policy); Chavez, 2007-NMCA-018, ¶ 25, 141 N.M. 116, 151 P.3d 77 (stating that *167 we may look to general legal propositions-inferred from legal precedent, "relevant statutes, learned articles, or other reliable indicators of community moral norms and policy views"-for guidance on policy questions (internal quotation marks and citation omitted)).
{34} Section 66-5-42 states, "No person shall employ as a driver of a motor vehicle any person not licensed as provided in this article." We digress here to address Coronado's argument that Section 66-5-42 does not provide guidance under these facts because Fennell was not employed as a "driver/chauffeur," but rather to repair tile. Coronado relies on Mavrikidis v. Petullo, 153 N.J. 117, 707 A.2d 977, 986-87 (1998) for the proposition that a person hired to perform tile work is not a "driver" for the purposes of Section 66-5-42. See Mavrikidis, 707 A.2d at 986-87 (holding that no basis existed to find liability on the part of the defendant because the independent contractor was hired to perform paving work and no evidence supported a finding that the contractor was incompetent to perform the work for which it was hired). Mavrikidis is distinguishable. In Mavrikidis, the court addressed an exception to the general rule that principals are not liable for the negligence of independent contractors. Id. at 984 (observing that an exception exists when a principal engages an incompetent contractor). As we stated earlier, Coronado conceded for the purposes of their summary judgment motion that Fennell was an employee of Coronado. We therefore conclude that Mavrikidis is not helpful to our analysis.
{35} By enacting Section 66-5-42, the legislature expressed its desire to protect the motoring public. To the extent that Coronado argues Section 66-5-42 applies only to those employees whose job duties entail solely driving or chauffeuring, we are not persuaded. We are not construing the statute, but rather looking to the public policy manifested by the statute. The public policy expressed in Section 66-5-42 gives recognition to Coronado's obligation to people who might come into contact with its employee on the road. See Herrera, 2003-NMSC-018, ¶ 9, 134 N.M. 43, 73 P.3d 181. We therefore conclude that public policy supports the existence of a duty to the motoring public. Just how this obligation is satisfied depends on the circumstances of the case.
{36} Any question regarding the scope of that duty, that is, whether it includes a duty to investigate the driver's record and how that duty may be satisfied, is a question of breach of the employer's duty, which is a question of fact for the jury. See Spencer, 2005-NMSC-002, ¶¶ 21-22, 137 N.M. 64, 107 P.3d 504 (rejecting the respondent's arguments that it had acted reasonably and stating that questions of breach and proximate cause are not suitable for summary judgment because questions of fact are for the jury); Bober v. N.M. State Fair, 111 N.M. 644, 650, 808 P.2d 614, 620 (1991) (stating that a determination regarding breach of a duty is a factual question, or mixed question of law and fact, and that this determination requires consideration "of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances"). This view is consistent with the Supreme Court's decision in Spencer, which stated that it was up to the jury to decide whether the defendant breached its duty "when it contacted [its employee's] references but did not perform any type of criminal background check." 2005-NMSC-002, ¶ 22, 137 N.M. 64, 107 P.3d 504.
{37} We find further support for our conclusion in the Restatement (Third) of Agency § 7.05(1), which provides that "[a] principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent." See id. cmt. a, at 177 ("The rules stated in this section are specific instances of general tort-law principles."); see also Gabaldon v. Erisa Mortgage Co., 1999-NMSC-039, ¶ 27, 128 N.M. 84, 990 P.2d 197 ("As a matter of course, we emphasize that the Restatement is merely persuasive authority entitled to great weight that is not binding on this Court."). The Restatement's various comments and illustrations make it clear that an employer's general duty *168 may also include the obligation to investigate an employee, depending on the circumstances. One illustration concerns the owner of a furniture store who hires A to deliver furniture to customers. When A enters T's home to deliver a sofa, A assaults T. "Prior to employing A, P conducted no check of A's background. Had P done so, P would have discovered criminal convictions for assault. . . . P is subject to liability to T." Restatement (Third) of Agency § 7.05(1) cmt. b, illus. 3 at 179. Another illustration concerns T Corporation, which hires P Corporation to provide security for T in its manufacture of gold-framed sunglasses. P hires A as a security guard after determining that A has no prior criminal record. However, P never asked A's references for comments regarding A's honesty and trustworthiness. While on guard duty at T's facility, A and his confederates steal gold. "P Corporation is subject to liability to T Corporation. P Corporation's conduct in hiring A was not reasonable under the circumstances." Id. cmt. d, illus. 8 at 181-82. These illustrations confirm our conclusion that it is a question for the jury to decide whether Coronado's actions or omissions constituted a breach of its duty of care or were the proximate cause of Lessard's injuries.
{38} Coronado also contends that New Mexico law limits any duty to only those members of the public who have a connection to a defendant employer's business. Coronado asserts that Lessard did not claim any connection to Coronado's business and thus her claim for negligent hiring or retention must fail. We are not convinced. The question of a nexus between the plaintiff and the employer is a question of proximate cause and not foreseeability in the context of duty, as asserted by Coronado. See Spencer, 2005-NMSC-002, ¶¶ 22-23, 137 N.M. 64, 107 P.3d 504 (concluding that the issue of proximate cause, which includes the connection between the employer's business and the plaintiff, must be left to a jury); Narney, 115 N.M. at 52, 846 P.2d at 358 (observing that determinations of proximate cause are generally questions of fact and that the fact that the employee was off duty was not dispositive); see also Restatement (Third) of Agency § 7.05 cmt. c, at 180 ("Liability . . . also requires some nexus or causal connection between the principal's negligence in selecting or controlling an actor, the actor's employment or work, and the harm suffered by the third party.").
{39} We are not persuaded in this regard by Coronado's reliance on Raleigh v. Performance Plumbing and Heating, 130 P.3d 1011, 1013-14 (Colo.2006). The majority opinion in Raleigh concluded as a matter of law that the employer did not owe a duty to the plaintiffs because they did not come into contact with the employee tortfeasor through his employment. Id. at 1013, 1019 (stating that the scope of the employer's duty did not extend to the plaintiffs because the job for which the employee was hired did not include driving to and from work). It appears that the majority in Raleigh confused the issue of scope or breach of duty with the issue of whether a duty existed. See Spencer, 2005-NMSC-002, ¶ 18, 137 N.M. 64, 107 P.3d 504. We are more in agreement with the dissenting opinion in Raleigh, which stated that "[c]ausation, not duty, is the applicable principle." 130 P.3d at 1020 ("If there is evidence that the employer has negligently hired an employee who is an unsafe driver and the employer controls or benefits from the employee's commuting by driving, then the case should be submitted to the finder of fact to determine whether the employer's negligence in hiring the employee caused injuries to a third party.") (Mullarkey, C.J., dissenting). When questions of breach and/or causation exist, summary judgment is not proper. These questions of fact must be reserved for the jury. Upton, 2006-NMSC-040, ¶ 7, 140 N.M. 205, 141 P.3d 1259 ("We view the facts in a light most favorable to the party opposing the motion for summary judgment and draw all reasonable inferences in support of a trial on the merits." (internal brackets, quotation marks, and citation omitted)).
{40} Similarly, we are not persuaded by Hare v. Cole, 25 S.W.3d 617, 621-22 (Mo. Ct.App.2000) (declining to hold as a matter of law that there is no duty to check the license status or driving record of applicants for driving positions, but concluding that the employer was not liable unless the plaintiffs *169 could show the that the employee was "in fact in the course and scope of his employment at the time of the collision"). We decline to draw a bright-line rule that would preclude recovery in a negligent hiring or retention claim if the employee was not acting within the course and scope of his employment. It is well settled that an employer may be liable for negligently hiring or retaining an employee even if the employee's acts were outside the scope of his employment. See Pittard v. Four Seasons Motor Inn, Inc., 101 N.M. 723, 729, 688 P.2d 333, 339 (Ct.App. 1984) (explaining that negligent hiring and retention are theories that may be asserted against an employer for an employee's assault outside the scope of employment). Whether the employee was acting within the course and scope of employment is but one factor that the fact-finder may consider in determining foreseeability in the context of proximate cause. Cf. Narney, 115 N.M. at 52, 846 P.2d at 358 (discussing foreseeability and proximate cause).
{41} Finally, Coronado relies on Gabaldon, 1999-NMSC-039, 128 N.M. 84, 990 P.2d 197, to argue that no authority supports a duty under these facts and that it would be contrary to public policy to do so because imposing such a duty would be a significant departure from existing law, create uncertainty in the law, and be open-ended as to time and place. Because the facts of this case are significantly different, we do not find Gabaldon dispositive. First, the cause of action addressed in Gabaldon was negligent entrustment. Second, the parties in Gabaldon did not lie within the parameters of a claim for negligent entrustment. See Gabaldon 1999-NMSC-039, ¶ 6, 128 N.M. 84, 990 P.2d 197 (declining to extend the tort of negligent entrustment to the lessor-lessee relationship). Third, we are not convinced that the facts of the present case will open the floodgates of "potential exposure" and impose unreasonable and uncertain duties. Our Supreme Court has emphasized that negligence in hiring or retention depends on the facts and circumstances of each case. See Narney, 115 N.M. at 52, 846 P.2d at 358 (concluding that summary judgment was improper because the fact-finder could have inferred that the defendant's acts or omissions proximately caused the plaintiffs' injuries). It is not our role to usurp the fact-finding functions of the jury. See Herrera, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181 ("Negligence is generally a question of fact for the jury." (internal quotation marks and citation omitted)). Thus, we conclude that the trial court erred in granting summary judgment in favor of Coronado on the claim for negligence in hiring or retention.
IV. CONCLUSION
{42} In regard to the claim of vicarious liability based upon respondeat superior, our review of the record leads us to conclude as a matter of law that Lessard has failed to offer evidence from which a jury could reasonably infer Fennell's actions at the time of the accident were within the scope of his employment. In regard to the claim for negligence in hiring or retention, we conclude that Coronado owed a duty to members of the motoring public. We further conclude that questions regarding the scope or breach of that duty, as well as questions of proximate cause, are questions of fact that must be reserved for a jury. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
{43} IT IS SO ORDERED.
WE CONCUR: CYNTHIA A. FRY and IRA ROBINSON, Judges.